# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND LAMAR PHILLIPS, | ) |
| | ) |
| Petitioner, | ) |
| | ) Civil Action No. 10-05 |
| v. | ) Judge Cathy Bissoon |
| | ) |
| DAVID DIGUGLIELMO, *et al.*, | ) |
| | ) |
| Respondents. | ) |

## **MEMORANDUM OPINION**

Raymond Lamar Philips ("Petitioner") filed this Petition for Writ of Habeas Corpus on January 4, 2010. (Doc. 1). Pursuant to 28 U.S.C. § 2254, Petitioner challenges his 2003 conviction in the Court of Common Pleas of Allegheny County, Pennsylvania, of first degree murder, 18 Pa. Cons. Stat. § 2501, for which he currently is serving a sentence of life imprisonment without the possibility of parole. Sentencing Hr'g Tr. at 13-14. For the reasons stated below, this petition will be denied.

## I. The Crime and the Trial

The facts presented at Petitioner's criminal trial were summarized by the Pennsylvania Superior Court as follows:

> The evidence at trial showed that at approximately 11:30 p.m. on July 27, 2001, the victim, Eric Kebert, was shot to death while driving his pick-up truck in Pittsburgh. The shooting was witnessed by Darcia Bagby, [Petitioner's] cousin. Bagby testified that she saw two black makes shooting in the same direction at the corner of Curtin and Climax Streets. She did not see either shooter's face, nor did she see the target of their gunfire. However, [Petitioner] fit the description of one of the shooters based on his weight, height, and build. Bagby was familiar with

> [Petitioner's] physical stature because she saw [Petitioner] nearly every day.
>
> When Officer Matlias arrived at the scene, he found Kebert dead in his truck, which had collided with another car near Curtain and Climax Streets. The truck had several bullet holes in it, and there were 22 shell casings found at the scene, all fired from the same gun. Based upon the evidence at the scene and Bagby's taped statement, [Petitioner] was arrested and taken to the police station. There, Phillips confessed to shooting Kebert, but claimed that he was the only shooter and that he did so in self-defense.
>
> The gun used in the shooting was later found during the arrest of Michael Berks, who testified for the defense at [Petitioner's] trial. Berks was arrested for a robbery and shooting that took place three days before the homicide in this case. Berks testified that [Petitioner] was present at the prior shooting, but did not aid him in robbing and shooting the victim. Berks then testified that on the day of Kebert's shooting, a man named "Jules" drove up next to him in the street. Jules asked to borrow Berks' gun, and Berks told him where it was hidden. Jules drove off in the direction of the gun. Some time later, Berks heard gunshots, and then Jules returned, saying that he had just shot someone for trying to run him over. Berks then told Jules to return the gun to the place where he had found it.

Direct Ap. Ct. Op. (Doc. 8-6 at 1-2) (internal citations to the record omitted).

Prior to Berks's testimony, the parties had placed the following stipulation on the record regarding the prior robbery and shooting.

> On July 24, 2001 an incident occurred at the same general location of Curtin and Climax. When the police responded to the scene, they encountered an individual who remained at the scene. That individual was Frank Alford. Mr. Alford was the victim in that incident. Also was recovered [sic] ten spend shell casings. They were analysed [sic] by Dr. Levine.[1] It was found that they were

---

[1] Dr. Levine was a criminalist with the Allegheny County Coroner's Officer, and a witness for the prosecution. Trial Tr. at 214-15. He was certified as an expert witness in firearms and firearm analysis during the trial, and he testified that the shell casings collected at the scene of (continued . . .)

> discharged from the same weapon that was used in the killing of Mr. Kebert.

Trial Tr. at 351-52.

The record indicates that the prosecution sought to introduce evidence regarding the Alford robbery and shooting – and Petitioner's alleged involvement therein – in an effort to demonstrate that Petitioner had access to the murder weapon.[2] As one might expect, Petitioner's trial counsel initially opposed any mention of the Alford shooting in a motion *in limine*, but was overruled by the trial judge. See Hr'g Tr. of May 12, 2003, at 13-21. However, the trial court did rule that no reference to the robbery could be made. Id. at 19-21. It appears that this stipulation was the product of some amount of negotiation between the Petitioner's trial counsel and the prosecution regarding how best to accomplish this.

After Berks's testimony that Petitioner was not involved in the Alford robbery and shooting, the prosecution planned to present a transcript of Alford's testimony that Petitioner had

---

the homicide were fired from the same gun, and that that gun was the one recovered during the arrest of Michael Berks. Id. at 216, 258-60, 265-66.

[2] As the Superior Court noted in its opinion affirming the denial of post-conviction relief, in spite of testimony from Detective Logan that Petitioner had confessed to the murder and claimed self-defense, Trial Tr. at 313-15, Petitioner did not make such an assertion in his opening statements, summation, or during testimony. PCRA Ap. Ct. Op. (Doc. 9-7 at 34 n.3). Instead, that statement was made only to police, and not by Petitioner – or his counsel - in court. Id. In fact, a review of the trial transcript shows that much of Petitioner's counsel's effort was directed toward undermining any identification of Petitioner as the shooter in the Kebert homicide. It was not until jury instructions were given that the jury was informed that Petitioner was claiming that he acted in self-defense. Trial Tr. at 428.

been, in fact, one of the individuals who robbed and shot him.[3] Instead, counsel were able to negotiate the following stipulation, which also was read into the record.

> This is our rebuttal. The first witness is as follows: Frank Alford was 21 years old on July 24, 2001. He has testified on a prior occasion that it was the [Petitioner] and Michael [Berks][4] that robbed him. At that time both [Berks] and [Petitioner] had handguns. Mr. Alford was shot this day. The police responded to this incident and they found ten shell casing and nothing else. Then there was a match of those shell casings to the shell casing [sic] in the death of Mr. Kebert.

Trial Tr. at 370-71. Complicating matters is the fact that the record seems to indicate – and Respondents do not dispute – that Petitioner had been acquitted of charges brought against him with respect to the Alford incident at the time of trial in the Kebert homicide. See PCRA Ap. Ct. Op. (Doc. 9-7 at 33); (Doc. 8 at 25-26).

Finally, the trial court provided the following instructions to the jury regarding evidence of prior bad acts.

> You also heard evidence tending to prove that the [Petitioner] was guilty of improper conduct for which he is not on trial. I am speaking to the incident involving Frank Alford. This evidence is before you for a limited purpose. That purpose is for the limited purpose of rebutting the testimony of Mr. [Berks].
>
> This evidence may not be considered by you in anyway [sic] other than the stated purpose. You must not regard this evidence as showing that the [Petitioner] is a person of bad [character] or

---

[3] Alford was deemed to be unavailable by the trial court. Trial Tr. at 368.

[4] The names of many of the individuals involved in this case are spelled in multiple – often inventive – ways throughout the record. In an effort to maintain some consistency, this Court adopts the spellings used by the trial court and Superior Court in their opinions on Petitioner's direct appeal.

-4-

> criminal tendencies from which you might be inclined to infer
> guilt.  If you find the [Petitioner] guilty, it must be because you are
> convinced by the evidence that he committed the crime charged
> and not because you believe he is wicked or has committed other
> offenses or improper conduct.

Trial Tr. at 419-420.

## II. Claims

Petitioner raises the following claims for relief:

1. The trial court erred in admitting the prejudicial and misleading prior crimes evidence regarding the Alford robbery/shooting.  (Doc. 1 at 8).  Specifically, Petitioner takes issue with the trial court's jury instructions regarding evidence of prior bad acts, as well as its refusal to admit evidence that Petitioner had been acquitted of the Alford shooting and robbery. Id. at 9.  Petitioner further argues that trial counsel was ineffective for failing to preserve this issue for appeal, and that appellate counsel was ineffective for failing to raise the issue on direct appeal.  Id.

2. Trial counsel was ineffective for agreeing to the above stipulations regarding the shooting and robbery of Alford.  He also was ineffective for failing to object to the trial court's jury instructions regarding the same, as well as for failing "to make any effort to have the jury informed that [P]etitioner was acquitted of all charges regarding the Alford robbery/shooting." Id. at 11-12.

3. The prosecutor committed misconduct at trial by presenting the above stipulations to the jury, and by "withholding" evidence from jury regarding Petitioner's acquittal of charges

stemming from the robbery and shooting of Alford.  Id. at 13-14.  Trial counsel also was ineffective for failing to object to the two stipulations regarding Alford.  Id. at 14.

**III.  Procedural Issues**

Before addressing the merits of Petitioner's claims, this Court will discuss whether these claims satisfy the applicable procedural requirements set forth by congress in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

**A.  AEDPA's Statute of Limitations**

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under AEDPA's one-year limitations period for section 2254 petitions.  28 U.S.C. § 2244(d).  Respondents concede that all of Petitioner's claims are timely under AEDPA's statute of limitations and, as a result, they will be treated as such.  (Doc. 8 at 19).

**B.  Exhaustion and Default**

Respondents argue that Petitioner's claims all are unexhausted and procedurally defaulted.  (Doc. 8 at 22-23).

As an initial matter, to the extent that Respondents make this argument based on the fact that Petitioner's assertions ineffective assistant of counsel were adjudicated under the standard set forth by Pennsylvania law, see (Doc. 8 at 21), they demonstrate a fundamental misunderstanding of the law.  It is true that the provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before

seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) (abrogated on other grounds by Beard v. Kindler, 558 U.S. 53, 130 S.Ct. 612, 618 (2009)); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). However, it is well established that the Pennsylvania standard for ineffective assistance of counsel is identical to the federal standard. See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2003). Thus, even if Petitioner invoked only Pennsylvania law when attacking his counsels' allegedly deficient performance, and even if the Pennsylvania courts cited only to Pennsylvania law when adjudicating such claims, they still were fairly presented in the state courts as violations of a federal constitutional right and, as such, were properly exhausted.

Next, with respect to the portion of Claim One, wherein Petitioner alleges that the trial court erred in refusing to admit evidence that Petitioner was acquitted of the Alford robbery and shooting, it is clear that this argument was procedurally defaulted due to Petitioner's failure to raise it on direct appeal. See PCRA Trial Ct. Op. (Doc. 9-4 at 38). A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. Sistrunk v. Vaughn, 96 F.3d 666, 673 (3d Cir. 1996). Moreover, violations of a state's procedural rules may constitute an "independent" and "adequate" state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims.

Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), cert. denied, 516 U.S. 1151 (1996); Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995). The procedural default doctrine applies only when a state procedural rule is consistently and regularly applied. Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988)); see also Doctor, 96 F.3d at 684 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

Pennsylvania Rule of Appellate Procedure 302(a) states, in unmistakable terms, that "[i]ssues not raised in the lower court are waived and cannot be raised on appeal[,]" and has been held to be an independent and adequate state rule for the purposes of habeas review of non-capital cases. See, e.g., O'Halloran v. Ryan, 704 F. Supp. 70, 74 (E.D. Pa. 1989)), aff'd, 887 F.2d 262 (3d Cir. 1989) (Table), cert. denied, 494 U.S. 1035 (1990). The PCRA trial court's application of this Rule was consistent with prior cases. See, e.g., Commonwealth v. Fowler, 893 A.2d 758, 764 (Pa. Super. Ct. 2006).

The same is true of Petitioner's allegations that the prosecutor committed misconduct "by presenting both of the misleading, inaccurate and prejudicial stipulation and for withholding evidence from the jury regarding Petitioner's complete acquittal of the Alford robbery/shooting charges[.]" (Doc. 1 at 14). As the PCRA trial court and Superior Court opinions note, Rule 302(a) bars these sorts of claims that are not raised on direct appeal.[5] See PCRA Trial Ct. Op. (Doc. 9-4 at 40-41); PCRA Ap. Ct. Op. (Doc 9-7 at 38).

---

[5] The relevant sections of these opinions seem somewhat to conflate Petitioner's direct attacks on what he perceived to be misconduct on the part of the prosecution, and his allegations of ineffective assistance of counsel with respect to the same. However, given the facts of this case, (continued . . .)

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); Carter, 62 F.3d at 595. The Supreme Court has defined "cause" as "some objective factor external to the defense." Murray v. Carrier, 477 U.S. 478, 488 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list. Id.

The second exception to the procedural default rule arises when a petitioner demonstrates that failing to allow his claims to proceed would result in a fundamental miscarriage of justice. See Schlup v. Delo, 513 U.S. 298, 320-22 (1995) (decided in the context of successive petitions). To show a fundamental miscarriage of justice, a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 321 (quoting Murray, 477 U.S. at 496). Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S at 324. Once such evidence is presented, a petitioner must

---

as well as the holding in Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002) the Superior Court's invocation of Rule 302(a) could only properly apply to the former, and not the latter. In any event, it is clear from the record that there was no misconduct with respect to the stipulations, nor did the prosecution "withhold" any evidence of acquittal in the Alford matter – which appears to have been known to all parties. Instead the prosecutor presented the stipulations and closing arguments within the framework set by the trial court's evidentiary rulings. To the extent that Petitioner seeks to attack those rulings, they are addressed in Part IV.B.1 of this memorandum opinion, infra.

then show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327. There is no indication anywhere on the record that Petitioner's failure to present the above claim properly to the courts of Pennsylvania was the result of "cause," or that not adjudicating this claim would result in a manifest injustice. Consequently, these claims have been procedurally defaulted, and will be denied.

Rather than engage in a lengthy analysis of the procedural propriety of Petitioner's additional claims – an issue which, it is noted, was not briefed by Petitioner, and was briefed poorly by Respondents – this Court instead will presume exhaustion of those claims, and proceed directly to their merits. See 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

## IV. MERITS

### A. Standard of Review under Section 2254

28 U.S.C. § 2254 allows a person in custody due to the judgment of a state court to seek a writ of habeas corpus based "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a).

In describing the role of federal habeas proceedings, the Supreme Court of the United States noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence. . . . The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Barefoot v. Estelle, 463 U.S. 880, 887 (1983) (superseded by statute on other grounds as recognized in Slack v. McDaniel, 529 U.S. 473, 480-81 (2000)).

The AEDPA has further "modified a federal habeas court's role in reviewing State prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Amended section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## B. Application of the Merits Standard

Each so-called "claim" raised in the petition actually consists of multiple, related sub-claims. Many of these sub-claims invoke the same legal theory – such as Petitioner's multiple

allegations of ineffective assistance of counsel that appear throughout his "claims." Thus, his "claims" for relief are most easily addressed if they are grouped by the legal bases on which they rest.

1. **Evidentiary Rulings**

Habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Taylor v. Horn, 504 F.3d 416, 448 (3d Cir. 2007); Smith v. Horn, 120 F.3d 400, 426 (3d Cir. 1997). Petitioner may obtain habeas review only of federal constitutional claims. 28 U.S.C. § 2254(a). Claims of state court error in interpreting or applying state evidentiary rules are not cognizable here. See Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991) ("We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implicate a federal constitutional guarantee."); Bisaccia v. Att'y Gen. of New Jersey, 623 F.2d 307, 312 (3d Cir. 1980) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 642-43 (1974)).

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." Crane v. Kentucky, 476 U.S. 683, 689 (1986). That said, it also is true that state evidentiary rules cannot be inflexibly applied in such a way as to violate fundamental fairness. See Chambers v. Mississippi, 410 U.S. 284, 299-302 (1973).

With respect to erroneously admitted evidence:

> To constitute the requisite denial of fundamental fairness sufficient to issue a writ of habeas corpus, the erroneously admitted evidence

> must be material in the sense of a crucial, critical, highly
> significant factor, and the probative value of the evidence must be
> so conspicuously outweighed by its inflammatory content that a
> defendant's constitutional right to a fair trial has been violated.

Peterkin v. Horn, 176 F. Supp. 2d 342, 364 (E.D. Pa. 2001). With respect to erroneously excluded evidence, a petitioner must demonstrate "[f]irst, that [he] was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." Gov't of Virgin Islands v. Mills, 956 F.2d 443, 446 (3d Cir. 1992).

In this context, the federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of the Supreme Court's precedent. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 407 (2000)). It is important to note that this standard is different from finding that the state court applied clearly established federal law incorrectly. "The unreasonable application test is an objective one – a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Lambert v. Beard, 633 F.3d 126, 133 (3d Cir. 2011) (quoting Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005)). Instead, the

-13-

application of the law by the state court must also be <u>unreasonable</u>. <u>Lambert</u>, 633 F.3d at 133. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. ----, 131 S.Ct. 770, 786 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).

Here, the Superior Court went so far as to hold that the Double Jeopardy Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment did not prohibit the admission of evidence relating to the Alford robbery and shooting – in spite of the fact that Petitioner had been acquitted of the same. <u>See</u> PCRA Ap. Ct. Op. (Doc. 9-7 at 33-34) (citing <u>Dowling v. United States</u>, 493 U.S. 342, 348 (1990)). Based on AEDPA's deferential standard, the state court's holding is neither contrary to, or an unreasonable application of, the law as interpreted by the United States Supreme Court.[6]

### 2. Jury Instructions

Petitioner also attacks the jury instructions provided by the trial court with respect to the above evidence or Petitioner's alleged prior bad acts. (Doc. 1 at 12).

---

[6] It is noteworthy that <u>Dowling</u> involved a case in which the jury had been instructed that the defendant had been acquitted of the prior bad acts at issue. However, the language of the opinion in that case does not indicate that that fact, alone, was dispositive. 493 U.S. 342, 353 (1990). As such, this Court is constrained by AEDPA to defer to the Superior Court's adjudication of this issue. Moreover, in light of the jury instruction provided by the trial court regarding this evidence, it is impossible to say that the evidence regarding the Alford incident was "'so extremely unfair that its admission violate[d] fundamental conceptions of justice[.]'" <u>Perry v. New Hampshire</u>, --- U.S. ----, 132 S.Ct. 716, 723 (2012) (quoting <u>Dowling</u>, 493 U.S. at 352).

As a general rule, a jury is presumed to have followed a judge's instructions. See Richardson v. Marsh, 481 U.S. 200, 211 (1987) (discussing this presumption in the context of an alleged violation of the Confrontation Clause). The PCRA trial court and Superior Court found that the instructions at issue, as a whole, were appropriate, and an independent review does not reveal any constitutional deficiency. To the contrary, these instructions clearly limit the purpose for which the jury could consider the evidence of Petitioner's involvement in the Alford incident – specifically, to rebut Berks's testimony that Petitioner was not involved in the Kebert homicide. The jury also was instructed that they could not convict Petitioner of the Kebert homicide simply because they thought that he might have been involved in other crimes. Moreover, Petitioner provides no evidence whatsoever that the jury failed to adhere to these instructions, nor is there any indication that he was denied a fair trial. Accordingly, even under *de novo* review, this claim would be denied.

### 3. Ineffective Assistance of Counsel

Petitioner's allegations of ineffective assistance of counsel permeate the three "claims" he presents to this Court.

The Supreme Court has formulated a two-part test for whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance was unreasonable; and (2) counsel's unreasonable performance actually prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of the conduct. Id. at 690.

The first prong of the Strickland test requires a petitioner to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id.

The second prong requires a petitioner to demonstrate that counsel's errors deprived him or her of a fair trial and the result was unfair or unreliable. Id. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id. It is well established that the test for ineffective assistance of counsel under Pennsylvania law is identical to the Strickland test. See Werts, 228 F.3d at 203.

Upon review of the law and the record, it is clear that the Superior Court's adjudication of this issue was not unreasonable under Strickland, and is entitled to AEDPA deference. There is no indication that counsels' representation of Petitioner was so deficient as to deprive him of his rights under the Sixth Amendment.

First, with respect to Petitioner's attack of trial and appellate counsel's failure to preserve the Alford evidence and related jury instructions for appeal, see (Doc. 1 at 8 and 11-12), the

PCRA trial court held that its rulings regarding the same were proper under Pennsylvania law, and that counsel could not be ineffective for failing to raise meritless attacks against them on appeal. PCRA Trial Ct. Op. (Doc. 9-4 at 38-39). The Superior Court affirmed. This is interpreted properly as a finding that any inaction on the part of counsel with respect to this issue did not result in prejudice to Petitioner – a conclusion that is supported by the record, and is entitled to AEDPA deference.

The PCRA trial and appellate courts came to a similar conclusion with respect to trial counsel's agreement to the stipulations, as well as Petitioner's assertions that trial counsel failed "to make any effort to have the jury informed that [P]etitioner was acquitted of all charges regarding the Alford robbery/shooting." Indeed, the PCRA trial court determined that trial counsel's agreement to the stipulations was part of his sound strategy of limiting the damage that would be caused by the introduction evidence of Petitioner's connection to the Alford robbery and shooting. PCRA Trial Ct. Op. (Doc. 9-4 at 39-41). This finding, and its resulting legal conclusion, are well-supported in the record, and entitled to AEDPA deference.[7] As such, all of Petitioner's claims of ineffective assistance of counsel must be denied.

## V. Certificate of Appealability

With respect to the claims that were denied on their merits, a certificate of appealability will be denied, as Petitioner has failed to make "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A certificate of appealability also will be

---

[7] Petitioner's assertion in Claim Three that trial counsel was ineffective for failing to object to the stipulations essentially is a rewording of his argument in Claim Two that trial counsel was ineffective for agreeing to them. To the extent that the former argument could possibly be read as anything different, it fails for the same reason as the latter.

denied with respect to the claims that were denied on procedural grounds, because jurists of reason would not find it debatable whether those claims were procedurally defaulted. See, e.g., Slack, 529 U.S. at 484 (explaining standard for grant of a certificate of appealability where court does not address petition on the merits but on some procedural basis)

An appropriate order will follow.


Dated: February 26, 2013

BY THE COURT:

s/Cathy Bissoon
CATHY BISSOON
UNITED STATES DISTRICT JUDGE

cc:
**RAYMOND LAMAR PHILLIPS**
FS-1866
S.C.I at Graterford
P.O. 244
Graterford, PA 19426-0244

Counsel of record